attorney, Mr. Tank, was going to proceed on with regards to this trial. If, and let's assume that that was a valid strategic defense for this case, and therefore we would lose on that issue of severance if that's the case. And that has the finding that both the State Appellate Court and the U.S. District Court made. That being the case, it was inexcusable of counsel to not pursue and investigate at least one potential witness that his own client gave him prior to trial, and that being Veronica, Veronica Moxley. Well, he didn't know Veronica's last name or where she lived, did he? Well, again there's some kind of a prostitute or somebody. There's conflicting testimony on that because at the the defendant specifically testified that he did provide his counsel with the last name of the defendant, which, or last name of Veronica, which was Moxley. And although he said he didn't have a phone number for her and didn't have a particular address from her, he knew how to get to her place and therefore could have provided instructions to defense counsel as to how to get to her place so she could have been investigated. Did counsel at some point or anybody ever get an affidavit from Veronica Moxley and put it in the record so we could know exactly what she was going to say? No. You don't have that? No, we do not have that. How do we know it was prejudicial for failure to find her if she's going to say nothing? We do know that the defendant had early on, and this is at the very beginning, this is before he even had counsel, he told the officers that the reason that he was in Detroit, or in the Michigan area, was that he was visiting with Veronica. So we know that, and this is before he ever speaks with counsel, and he's from the California area. He also informed his counsel that not only had he been, that he traveled to Michigan to see Veronica that time, but he'd been to Michigan to see her five or six other times prior to that time. And that formed, that was the only formation of a mere presence argument that defense counsel could have made because defense counsel didn't argue that he was here to see his friends. He didn't argue that he was here to see someone else who was a relative. The only basis that he had for Mr. Lott to be in Michigan at this time was to see Veronica. And so regardless of, again, we don't know what Veronica would say, but we have at least an averment of, had she been investigated, she could have either confirmed or denied that story. If she would have, yes? Did your client have a lawyer at the Genther hearing? Yes, a different attorney than he had for his trial. So the place to put it in is for him or her, whoever it was, to put in this affidavit from Veronica Moxley and say, yes, I was there, or no, I wasn't, or I could have testified to this. That would have provided a nice way of doing it, right? I agree that that would have made the record much more factual for purposes of today. Otherwise, we don't really know that what she'd say was anything. But the problem in this case is that the state court and the U.S. district court ultimately found that it wasn't ineffective for failure to even investigate this particular defendant. If we find that there was inadequate performance, okay, let's say that was inadequate. We would still have to find that it was prejudicial. And if we don't know what she was going to say, then how do we find the prejudice? The only way we would be able to evaluate prejudice is to be able to rely on what Mr. Lott indicated that, A, she was going to say had she been called, because he did testify that she would have been able to verify that he was with her. But more than that, we have the fact that at the time he was arrested, he provided her name to the officers almost immediately, which would have been a verification point. All of which goes to, yeah, probably that was inadequate on the part of counsel. But he says she could have said that he had come to visit her and maybe even done that before. He doesn't say that she would have testified that that was the sole reason he was ever there. I agree. I agree. But actually, Mr. Lott says that. Mr. Lott testified to that, that that was the reason that he was there. He can't tell us that she would testify to that. I agree. But the problem is that neither the State Court of Appeals nor the District Court ever got to the issue of prejudice on this issue, because they held that it was a strategic basis not to go out and even investigate this particular. But under some of the more recent Supreme Court precedent, we can look and see whether prejudice could have been shown. Absolutely. Absolutely. Couldn't. Well, I disagree that it couldn't have been shown, because had the State Court decided to give effect to Mr. Lott's testimony that this is what Veronica would have testified to, if the court would have done that, which the court never got to because of the first prong of Strickland, then there could be evidence on the record to at least support the court's ultimate finding on this issue. But I agree, without the affidavit from Veronica, it does make it a much more difficult issue. But one of the other ineffective assistance of claims that we have that we've raised before the court was the failure to address the issue of consent. And in this case, consent was whether or not consent was given was critical to the outcome of the case. As a matter of fact, I believe that the original defense counsel even admitted that without the evidence that was in the car, they wouldn't have a case against Mr. Lott. Did his lawyer testify that Lott told him he gave consent? He did. He did. Would it be a violation of ethics for him to put Lott on there and Lott say, I didn't give consent after Lott had already told him personally that he did give consent? It would be a violation, it would be a problem if he put Lott on the witness stand to make that argument. But that doesn't prevent you from raising a motion to suppress on that issue because on the issue of consent, the burden is with the state. Yeah, but the hearing officer found that the officer was credible that said Lott gave consent, right? Isn't that true? Well, there was never... Judge or whoever it was, a magistrate. There was never a motion to suppress. So the whole issue of consent was never fleshed out in the state court record. What at the Ginther hearing, after the Ginther hearing, what was Mr. Lott told his counsel that he'd given consent, that the counsel didn't need to go any further at that point. But there are two problems with that. Number one, consent is not an issue of fact necessarily, it's an issue of law because you can give consent and that consent cannot be voluntary under the law. So it was still, even if Mr. Lott said that, which by the way, Mr. Lott actually denied that he told his counsel that. But even if Mr. Lott said that, it wouldn't have prevented counsel from at least taking a look and seeing whether or not the legal basis for consent was given in that case. And in this case, there are facts that support that. If I can bleed into one minute of my rebuttal time to kind of flesh this out, there was no written consent form that was signed in this case. There was, the evidence at trial showed that there was kind of a, that the officer himself kind of went back and forth as to the facts that revolved around consent because at one point, he had stated that Mr. Lott provided him with the keys to the vehicle. And then at another point, he said that Mr. Lott was across the room and pointed to a dresser and said that the keys were on the dresser. That's not providing keys? Well, it could be seen to be just a submission to authority. Remember that Mr. Lott was actually being detained at the time that this all occurred. And Mr. Lott, there's no indication that Mr. Lott was told that he couldn't consent. There was no indication that Mr. Lott knew about his rights to be able to make an informed decision as to whether consent in this case. It simply could have been a submission to authority by saying, there are the keys if they asked, where's your car? And there are cases from this court that talk about the inevitable submission to authority. So given all those facts, and I see my extra minute is up, counsel should have pursued the consent as a motion to suppress. And I'd leave the rest of my time for rebuttal. Thank you. Good morning, your honors. Liz Rivard appearing on behalf of Warden McLaren. This is a relatively simple case and not a case involving a calamity of errors. When you peel back the layers of each claim, you see that trial counsel did provide reasonable trial strategy to his case. No prejudice exists. And the state court's decisions were not objectively unreasonable determinations of the fact. Getting to a quick point I'd like to mention that I did not quite articulate very well in my brief. The deficient performance prong is measured based on what counsel knew at the time he made the decision. And when we look at the severance claim, nobody had testified yet. So we can't look at his sole basis for relying on deficient performance for severance, which he relies only on the statement that the officer testified regarding Mr. Rhodes as a basis to grant habeas relief. That's under Kimmelman, which cites Strickland. With regard to the witnesses, it's clear that he cannot show what she would testify. And the fact remains that he wasn't with this particular, he's not alleging he was with this woman at the time he was caught with his friends and 11 kilos of cocaine. Regarding the consent issue, that's going to require us to delve into whether or not essentially the intersection of E1 and D2. And our position is that he's going to have to show by clear and convincing evidence under E1 that the state trial court's determination of credibility was inappropriate. He can't meet that burden. What the trial court said is that yes, and he made a couple of statements that later on at the Ginta hearing, he says that yes, he told me before the hearing that he consented. He clarified and says that after he finished cross-examining the officer about what occurred regarding the consent, he went back to counsel table and asked his client, is that what happened? And his client said, yes, just as the officer indicated. Now when was this? At what stage was this in the trial? This was at the Ginta hearing when trial counsel was testifying about the consent issue. I believe it was on redirect where he brought out that yes, his client had told him before the hearing that there was consent and whether or not he was going to delve into that further was rendered moot by his client saying it at the preliminary exam that it happened exactly as the officers indicated and had testified about. Plus the consent was in the police report and as chief judge noted that essentially the fact that he gave the keys to him, it was just clarified, he gave them the keys indicating that they were on the dresser. And any analysis under Lucas can still be met. Lucas has said that a statement by the officers that they can deny consent is not dispositive. And looking at his, you know, he's 30 years old, 30 year old man, doesn't allege he's unintelligent, doesn't allege that he's uneducated, doesn't allege that he didn't understand his Miranda warnings, which the officers indicated were given at that time at the hotel. He was, you know, the circumstances, he was in a hotel with even fewer officers that were present in Lucas's case. And regarding the course of conduct, he's just making conclusory assertions on that. He offers nothing about the officers threatening him in any way. So even if we did dive into Lucas, we can still show that consent exists. And, you know, other than that, I mean, unless this court has any questions, I, you know, he can't show prejudice under any of these issues. And I would be happy to address any concerns this court may have. What were any kind of drugs found in that Taurus that the defendant? No, there were not. The drug dog. Tools that matched another, that was something in another car, right? The Blazer or whatever it was. The car that Mr. Lott had rented at, well, the drug dog, Teddy, detected and alerted to narcotics at the trunk. He also alerted to narcotics at the driver's door handle. So that's two alerts. That's, you know, and we've shown he's reliable because he just found cocaine in the other car at the Blazer previously that was driven by Turrentine. In the trunk, based on the which you could go to Florida v. Harris, which just came out this last year, you know, is, gives probable cause for a search for a warrantless search. But in the trunk, they find heat sealers, plastic baggies, similar to what was used, not exactly, but similar. And that's what the prosecutor argued. Zip ties, clothing, smell of gasoline, and tools that resembled the tools that were just used to disassemble the gas that they found the 11 kilos of cocaine within. Tying all this together, him saying he was there to meet his friend Turrentine. They were found in the hallway together. He was found in the hallway together with Rhodes. Drug dog alerts to narcotics on his car. They found these items in his trunk. He can't show prejudice regarding the witnesses, regarding closing statement, and regarding his other claims. So, unless this court has any other questions. Well, that would lead some people to think that it was easy for him to consent for the search of the Taurus because it didn't have any drugs in it at all. It had those tools and some other things that looked like drug paraphernalia, but there was no really drugs found in there, right? Possibly, but trial counsel's argument, and this was his strategy as to he was just an innocent bystander. Trial counsel's argument was he had no idea this stuff was even in there. Why would he not consent if he didn't know this stuff was in there? And trial counsel argued at closing that there's no evidence to show, the prosecutor offered no evidence to show that the vehicle was exclusively in Mr. Lott's control throughout the entire duration of the moment he rented the car until they conducted the search. That was the arguments made, and that was a reasonable trial strategy. Thank you. Thank you, your honors. Just one comment on the last thing. It couldn't have been a reasonable trial strategy to make this argument. It was the only strategy in light of the fact that no motion to suppress was made because all that evidence was in the record by the time of closing argument. Therefore, counsel had to do something with all of that evidence that was in the torus. But had, obviously, there been a motion to suppress filed and it had been granted, then he wouldn't have had to deal with that at closing argument. But more importantly than that, as you just heard, there was no indication that anybody other than this defendant had control and it was the inculpatory evidence as defense counsel admitted. Without that evidence, they don't get a conviction on Mr. Lott. Therefore, what sense did it make to not challenge that evidence? And what sense did it make to try to argue that he didn't know anything about it given the rest of the facts in the case? That's not reasonable trial strategy. Well, in hindsight, I hear you. But what is particularly troubling to me about the argument that you're making is that you're saying that it can't be a reasonable, as I understand you, you're saying that it can't be a reasonable trial strategy to believe your client that he gave consent. So your position is, yeah, you can believe him, but you still have to file the motion to suppress because if you don't put him on the stand, then the government isn't going to be But are we really going to say that it is unreasonable on the part of counsel knowing what he knew not to file a motion to suppress just on the chance that the government might not be able to prove that the consent was actually given? Well, two things on that. Number one, being a defense attorney for years, I've always learned never to believe my client the But more than that, um, given they consented, though, that's to the contrary. Yeah. The but more they didn't do it, didn't do commit the crime, you can disbelieve them. But if they say absolutely, I can. And you said generally, the first story is always wrong. I'll give you that, you know, but but more than that, let's taking out that issue of whether Mr. Lott believed that he consented or not. A reasonable attorney taking a look at the objective facts otherwise would have filed a motion to suppress in this case because of the issues with regards to consent. Thank you. Thank you. The case will be submitted. Clerk may call the next case.